Good morning, Your Honors. May it please the Court, my name is Katherine Lewis, and I'm appearing today on behalf of the petitioner, Ms. Navneet Handal. As a threshold matter, the proceedings in this case should never have been reopened. The plain language of the regulation requires that DHS show that the evidence it offers in support of its motion to reopen is, quote, not available and could not have been discovered or presented at the former hearing, end quote. Here, on the face of the record, it is clear that DHS had already discovered that Mr. Bossie may have been engaged in fraud before Ms. Handal's asylum hearing in March of 2002. As the Department of Homeland Security agent Eisenhardt testified, sometime in 2001, the department, quote, had a lead indicating that there was fraud in connection with Mr. Bossie, end quote. And that's at AR 285 of the record. And he also indicated that shortly thereafter they did a search of Mr. Bossie's office. Thus, at the time of Ms. Handal's hearing in March of 2002, at which point DHS knew that Mr. Bossie had prepared Ms. Handal's asylum application, they easily could have moved to continue the hearing pending their ongoing investigation of Mr. Bossie. But they did not. Instead, they waived appeal of the grant of asylum. When faced with a similar situation, the Eighth Circuit in Halley-Michael v. Gonzales explained that, quote, although we are sympathetic to DHS's argument that its workload requires it to employ its investigative resources cautiously, evidence that could have been gathered before the initial hearing does not meet the regulation's requirement that a motion to reopen be supported with evidence that was not available and could not have been discovered at the time. Sotomayor Do you really want us to hold that if the government has some suspicion in conducting an investigation, that it should put everything on hold? I mean, your client has enjoyed asylum status, and it could have been that nothing ever came of it if the government had decided to do this, and your client, if the investigation had gone a little different way, and your client would have been limbo all that time. Your Honor, I think it comes back to the plain language of the regulations. And DHS, if they want to argue that the client shouldn't have been granted asylum in the first instance because there was somehow fraud in the application, they should have brought that at the time of the initial proceeding. Well, but that was, he didn't, the preparer didn't plead guilty until after the hearing, isn't that right? That's correct, but that's not the controlling inquiry for purposes of finding out whether this information was previously available. While the conviction didn't happen until 2003, first, the conviction itself isn't actually material to Ms. Hundle's claim because it involved only applications prepared between 2002 and 2003, whereas her application was prepared in 2001. So it's, in fact, not relevant to her specific claim. But DHS doesn't have to have a conviction in order to move forward and say that somebody's application contained fraud. Obviously, they were on notice. They'd even searched his office and seized files at the point of her asylum hearing. And so they easily could have put the court on notice that there was some issue here, and their failure to do so and their decision not to doesn't mean that they can now come back and try to reopen the proceedings later because of the way the regulation works. And the, with regard to the termination itself, the IJ also erred in failing to make any kind of explicit credibility finding regarding either Ms. Hundle or Mr. Bossi. It's basically a he said, she said kind of case. And so the whole case turns on the credibility of the witnesses. And here the IJ's failure to render any kind of specific credibility finding with regard to Ms. Hundle or Mr. Bossi is plain error. This Court looks to credibility findings to see if they're supported by substantial evidence. And without such a finding, this Court can't conduct a proper review. And this failure to make an explicit credibility finding is even more of a glaring error where Ms. Hundle was initially found credible by the immigration court. And insofar as she was renewing her prior applications, it's clear the case law requires the IJ to make a threshold credibility finding. And implicit? This Court found that implicit credibility findings aren't sufficient, that the judge needs to be explicit in their credibility determinations, but. That's certainly true in other contexts. But have we ever said that in this particular context? There's not a point that's directly on point in the termination proceedings about this specific issue. But I think common sense renders it clear that the Court needs to have something to review and there needs to be substantial evidence and some reasoning by the IJ as to why they're finding a witness credible and another witness not credible. And here, like, with regard to Mr. Bossi's testimony, for example, the IJ merely says that his plea agreement does not include a provision requiring him to testify against his former clients in immigration proceedings. But she doesn't go on to say whether or not she believes him or not. And Mr. Bossi's own testimony is actually contradicted by the IJ's reasoning there. He actually testifies that he was serving as a witness as a condition of his plea, and that's at AR-327 of the record, and that he hadn't yet been sentenced. And he's known to have repeatedly lied to immigration adjudicators in the past. He's a convicted felon. Not only did he engage in fraud and asylum applications, but also he obstructed justice by tampering with witnesses, according to Mr. Eisenhardt's testimony, and that's at 287 of the record. And the IJ can't just ignore these negative facts. And insofar as she makes the observation that Eisenhardt's testimony was consistent and strongly corroborated by Bossi's testimony, first, she doesn't address that there are actually some inconsistencies between those two testimonies. For example, about who went and allegedly who removed certain papers from Ms. Hundle's file, and this is, you know, an interesting fact because her case is unique. Her file that was seized from Bossi's office was unlike any other file of the approximately 100 that were seized. And the IJ doesn't grapple with the inconsistencies regarding this different file in Eisenhardt's testimony and Bossi's testimony that's inconsistent. And the fact that Mr. Eisenhardt's testimony is somewhat similar to Mr. Bossi's isn't surprising, since he says in his own testimony that it was based on conversations with Mr. Bossi. He wasn't there when the application was prepared. And so his knowledge is based on Mr. Bossi's own statement. So the IJ needed to offer some specific reasons and some rationale as to why Mr. Bossi, why she was crediting his testimony over Mr. Hundle's. In addition, her other reasons for finding that DHS didn't meet or did meet its burden of proving Ms. Hundle's asylum application contained fraud are simply not supported by substantial evidence. None of the reasons are specific enough to be a trademark of a fraudulent claim, rather they're characteristics that could be common in many asylum applications. For example, the IJ relies on the common facts, such as persecution for being a member of Akali Dalman and being beaten with a wooden stick and leather belt. But these kinds of facts are, you know, as the regulations and the court and common sense recognize, that it's often common patterns of abuse from people from the same kind of country. And so this reasoning and the others offered by the IJ simply aren't supported by substantial evidence. And I'm going to reserve my time at this point. Thank you. Thank you. Good morning, Your Honors. May it please the Court. My name is Sana Lee, representing the Respondent, the Attorney General. First, I would like to point out that this Court lacks jurisdiction to review the immigration judge's grant of the Department of Homeland Security's motion to reopen because the petitioner never argued this challenge, that finding, to the Board of Immigration Appeals. The Board never had any opportunity to rule on that motion to reopen grant. And so this Court should not consider it. But if it does indeed consider that grant, the Court should find that the immigration judge's grant of the motion to reopen was well within his discretion. The Department of Homeland Security presented prima facie evidence of fraudulent application filed by Ms. Hundahl. And the Department of Homeland Security submitted Mr. Bazzi's plea agreement, and that was clearly enough evidence to reopen Ms. Hundahl's proceedings. And as far as the fact that it was the petitioner argues that it was not unavailable at that time, the plea agreement was in fact took place in 2003, which was over a year after Ms. Hundahl was granted asylum in 2002. And that was clear evidence that the proceedings should have been reopened. And as far as the fact that the investigation was ongoing during 2002, the Department of Homeland Security's attorneys who prosecute these immigration cases, there's no indication that they actually knew that this investigation was going on. It seems that they learned about the fraud after the plea agreement was taken in court. And as far as the termination of asylum goes, the record does not compel the conclusion that the grant of asylum should not have been terminated in this case. The immigration judge pointed out various factors in Ms. Hundahl's asylum application that were very similar to the hundred other fraudulent applications that were filed by Mr. Bazzi. And some of these factors include the fact that she alleged that she was a member of the Akali Dalman Party, that she advocated for a separate state for Sikhs called Khalistan, and references to being beaten with a wooden stick and a leather belt, being dragged into a courtyard by police. These are very specific factors that were common in many of these hundred fraudulent applications. And also the Department of Homeland Security's senior special agent, Eisenhardt, testified that he conducted this investigation, and based on his review of the evidence, that Ms. Hundahl's application showed that it was fraudulent. And also Mr. Bazzi himself testified, and he was the one who prepared the application. And he himself testified that none of the applications that he prepared were true. He also said that none of the applicants that he helped ever said that their stories of persecution were credible or true. And so based on that evidence, the immigration judge properly terminated the grant of asylum because Ms. Hundahl's application was fraudulent. And other factors. It's the same story, I guess, in all of the applications. Help me on the procedural status of the challenge to the grant of the motion to reopen. You say that he did not, that she did not exhaust her remedies. That's right. That she didn't directly challenge that in her appeal to the BIA? Right. She never raised any sort of challenge to the board. And so the board did not have any. All she did, in your view, was simply ask for the remand for adjustment? Right. She challenged the immigration judge's termination of asylum and also asked for a motion to remand her case based on her marriage, which took place after the proceedings were reopened. Right. But the motion to remand is properly before us in your view, true? I'm sorry? The motion to remand would be properly before us because that was exhausted before the BIA, correct? Right. Right. The board did have a chance to rule on that motion. Tangentially, I guess, the fraud is because the board said we're not going to grant the remand because of the likelihood that the marriage is fraudulent, right? Well, the INA provides that an applicant who files a visa petition based on marriage during removal proceedings is barred from doing so unless, you know, they meet this exception by showing that the marriage was bona fide. Right. And so in this case, Ms. Hundahl failed to do that. She submitted a few things like her husband's divorce decree, their marriage certificate, a receipt for the I-130 visa application, things like that, but they did not submit any evidence that meets the standard to show that their marriage is bona fide. They didn't. She had quite a bit, though, didn't she? She had an ultrasound and a bunch of, I mean, taking all the things she submitted, is that not prima facie case that it might be bona fide? In this case, Your Honor, no. I think the board acted within its discretion in finding that she did not meet a prima facie case, and especially because she was found to have filed a fraudulent asylum application, I think. So are you saying if somebody files a fraudulent asylum application, they can never qualify? No, I'm not saying that, Your Honor, but I think in this ---- The regulations permit it, so that couldn't be true. Right. I just think that the evidence that she submitted did not show that she was ---- What kind of evidence would meet that standard? Well, the regulations state that they give examples of things like showing that you own joint property or that you are tenants in common. And I think some other things, and they also state that you can provide other evidence. Joint bank accounts. Right. Commingled funds. But Ms. Hundon did not submit any of that evidence. Or even say an affidavit filed by somebody that they both knew stating that these people have known each other and this marriage is a bona fide marriage. So the Board reasonably denied that motion to remand. And as far as the termination goes, the record here does not compel the evidence that the grant of asylum should not have been terminated. And I will rest on that, Your Honor. I just have one follow-up question. I don't think we've decided in this context whether or not an express finding of adverse credibility must be made, but we certainly have in other contexts. So explain to me what why you think we should or should not extend that holding to this context. Well, Your Honor, the that holding was in cases where the merits of the asylum application was at issue. But that case, I'm sorry, that stage has already passed in this case. And since. But why is this any different? Because you're terminating the asylum. Well, because based on the regulations, all that the Department had to show by a preponderance of the evidence was that there was fraud. And that's what happened here. They showed that it was fraudulent. And I think, you know, implicit in the immigration judge's finding is that Ms. Hundahl's testimony was not credible. No, I understand that. But, I mean, that would be insufficient in an asylum case. And I'm not arguing one way or the other, but it may be a point that we have to address. And I was curious as to your view of that. Because if, in fact, that's a requirement, then we'd have to remand for the making of an adverse credibility finding. If not, then we don't. Well, I think like in other cases that involve fraud, say like a crime involving moral turpitude where the government has to show that there was fraud involved, I don't think in those cases that the government has to show, I'm sorry, that the immigration judge was required to make an express credibility finding in those cases. Okay. In this case, was that argument ever made? I'm sorry. Was the contention that there should have been a more express credibility finding made? Yes. I believe that Ms. Hundle made that argument before this Court. No, I meant administratively. Oh, no. I don't think she made that argument to the Board, no. And so we argued in our brief that she didn't exhaust that claim. Okay. Okay. Thank you. Thank you. In terms of the exhaustion issue in this case, it's very important that here the Board cites matter of Burbano in affirming the I.J.'s decision. And this Court has repeatedly held that when the I.J. cites Burbano, all the issues presented before the I.J. are deemed to have been presented to the BIA. So they don't have to be explicitly raised in the administrative proceedings. Here, Ms. Hundle clearly challenged the reopening of the case before the I.J. She issued a – she filed a written opposition to that reopening. The I.J. considered that and denied it based on the evidence was not material and previously unavailable. And thus that issue was exhausted before the I.J. Because it was a matter of Burbano affirmance, the issue is before this Court. What about the adverse credibility finding? Likewise, I would argue. Well, except that you couldn't challenge the adverse credibility – lack of an adverse – specific adverse credibility finding for the I.J. because the I.J. hadn't made the finding yet. So did you raise that on appeal to the BIA? Well – Not you, though. Not me. But, yes. I think that in – in terms of the closing arguments, even in that case, they're saying you need to believe Ms. Hundle over Mr. Bossi. And so I think – I understand your argument. I just wanted to see if anybody raised it before the BIA. I don't know that it was explicitly argued as it was in the brief before this Court. And then just in terms of the motion to remand the record for adjustment of status, it's important to look at what the Board actually held with regard to that. They denied the motion to remand because DHS opposed the motion on the basis that Ms. Hundle had not submitted sufficient evidence that the marriage was bona fide. Not their own finding that the marriage was not bona fide. It was because DHS opposed it on that ground. And they cite matter of Velarde. This case is directly controlled by Ahmed v. Mucosky, where the Court basically had a similar set of facts and found that the Board needed to make their own independent finding on the motion to remand. And just one last quick thing was that the IJ, in regard to the withholding in CAT claims, clearly in that context this Court has found there needs to be an express credibility finding insofar as she was renewing those applications. Thank you. Thank you. The case just argued is submitted for decision.
judges: Adelman, Schroeder, Thomas